# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In the Matter of:                                    }
JEREMY D.  RODGERS                          }     CASE NO.  14-83452-CRJ-13
SSN:   XXX-XX-6320                               }
MEAGAN D.  RODGERS                         }
SSN:   XXX-XX-9250,                              }     CHAPTER  13
                                    Debtor(s).       }

## MEMORANDUM OPINION ON
## DEBTORS' MOTION TO MODIFY

This case came before the Court on September 19, 2016 upon the Debtors' Motion to Modify

Plan ("Motion to Modify") and the Limited Objection to Debtors' Motion to Modify Plan filed by

Listerhill Credit Union ("Limited Objection").  The Debtors propose to modify their confirmed Plan

by surrendering a 2006 Nissan Xterra to Listerhill Credit Union ("Listerhill") and by reducing their

plan payments from $325 per month to $225 per month.

Listerhill objects to the proposed modification to the extent that the Debtors also propose to

alter the secured status of Listerhill's claim upon surrender of the vehicle.   Listerhill does not

oppose the surrender, but maintains that after the vehicle is liquidated the balance of its claim should

remain secured.   In support of its Limited Objection, Listerhill cited an unpublished decision

rendered by this Court denying a  Motion to Modify pursuant to which a debtor sought to surrender

an inoperable vehicle to Listerhill and to reclassify the deficiency balance of Listerhill's claim as

unsecured.  *See In re Bates*, Case No. 12-82288-CRJ-13 (Bankr. N.D. Ala. June 8, 2015).

In *Bates*, the Court recognized that there is a split of authority with regard to the post-

confirmation surrender of collateral and reclassification of claims.  After considering the case law

at the time, the Court adopted the line cases following the Sixth Circuit's decision in the case of

*Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000) in which the Sixth Circuit

held that a debtor cannot modify a plan under § 1329(a) by surrendering collateral to a creditor, having the creditor sell the collateral and apply the proceeds to the claim, and then reclassifying any deficiency as un unsecured claim.

Given the split of authority when the Court last considered the issue, on September 20, 2016, the Court entered an Order Requiring Listerhill to File a Brief on Post-Confirmation Surrender and Modification specifically addressing any decisions reported since the Court last considered the issue. On October 19, 2016, Listerhill filed a Brief in Opposition to Debtors' Motion to Modify in which Listerhill disclosed that there have been seven published decisions addressing this issue since the Court last considered the matter.[1] The reported decisions reveal that courts continue to be divided over whether the post-confirmation surrender of collateral and the reclassification of a secured claim is permitted. Listerhill argues that the amount and classification of a claim is established by the Confirmation Order and that the Bankruptcy Code does not permit a confirmed plan to be modified to change the classification of a previously secured claim to unsecured upon surrender of collateral.

---

[1] *See In re Scarver*, 555 B.R. 822 (Bankr. M.D. Ala. Aug. 24, 2016)(permitting post-confirmation surrender and reclassification of claims); *In re Royal*, 2016 WL 2568861 (Bankr. E.D.N.C. May 2, 2016)(following *In re Nolan* and explaining that a fifteen year old vehicle's mechanical problems did not constitute a substantial and unanticipated post-confirmation change in circumstances); *In re Dennett*, 548 B.R. 733 (Bankr. N.D. Tex. March 31, 2016)(finding that the post-confirmation surrender of real property and the reclassification of the secured claim was not *per se* prohibited); *In re Ridings*, 2015 WL 9434769 (Bankr. E.D. Ky. Dec. 22, 2015)(following *In re Nolan* and denying reclassification of the IRS's secured claim); *In re Anderson*, 545 B.R. 174 (Bankr. N.D. Miss. Oct. 19, 2015)(permitting post-confirmation surrender and reclassification upon finding that the modification was proposed in good faith); *In re Ramos*, 540 B.R. 580 (Bankr. N.D. Tex. Nov. 13, 2015)(finding that debtors could not modify their plan to provide for the surrender of mortgaged property at the end of a 60 month plan when it was no longer possible to provide for the deficiency claim*); In re Jones*, 538 B.R. 844 (Bankr. W.D. Okla. Sept. 24, 2015)(finding that post-confirmation surrender and reclassification is permitted, but lack of evidence regarding debtor's current ability to pay prevented the bankruptcy court from finding that the modification was proposed in good faith).

Additionally, Listerhill argues that the Debtors' confirmed Plan has already been modified three times and that it would be inequitable to reclassify Listerhill's claim as unsecured given the small distribution the creditor has received on its secured claim.

Based upon the Court's review of the law and the recent decisions reported in Listerhill's brief, the Court now adopts the reasoning expressed in the case of *In re Scarver*, 555 B.R. 822 (Bankr. M.D. Ala. 2016)(Sawyer, J.) and finds pursuant to 11 U.S.C. § 1329 and § 502(j) that a debtor may modify a confirmed plan to surrender collateral and to reclassify the remaining deficiency as an unsecured claim if the proposed modification complies with certain criteria as discussed more fully below, including the requirement that the proposed modification has been filed in good faith. The Court further finds that an Evidentiary Hearing must be conducted to determine whether the Debtors' modification has been proposed in good faith under the circumstances of this case.

## I. FACTS OF FACT[2]

1. On August 16, 2012, the Debtors borrowed $9,450 from Listerhill to purchase a 2006 Nissan Xterra.

2. On December 22, 2014, the Debtors filed for bankruptcy relief under Chapter 13 of the Bankruptcy Code. On Schedule I of their Petition, the Debtors reported that they were both employed and listed combined monthly income in the amount of $3,520.35.

3. Concurrently with their Petition, the Debtors filed a Chapter 13 Plan pursuant to which they proposed to retain their 2006 Nissan Xterra. The Debtors valued the vehicle at $5,000 and

[2] To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such.

proposed to pay Listerhill adequate protection payments in the amount of $50 per month and fixed payments of $140.72 beginning in month eight of the Plan.

4.     On January 26, 2015, Listerhill filed a proof of claim in the amount of $5,619.84 as fully secured.  Listerhill reported on the proof of claim that it had voluntarily reduced its annual interest rate from 11.25% to 6%.

5.     On January 27, 2015, the Debtors filed an Objection to Proof of Claim filed by Listerhill seeking to further reduce the interest rate on the creditor's secured claim to the Plan rate of 5.25%. Listerhill did not file a request for hearing or otherwise respond to the Objection. Accordingly, on February 27, 2015, the Court entered an Order on Objection to Claim sustaining the Objection and reducing the interest rate to 5.25%.

6.     The Confirmation Order entered on April 10, 2015 provides that Listerhill will be paid monthly installments of $147 until Listerhill's claim is paid in full.  Pursuant to the terms of the confirmed Plan, the Debtors were required to pay the Chapter 13 Trustee $450 per month for a term of sixty months. The confirmed Plan provided for a pro rata distribution to unsecured creditors.

7.     The Debtors' confirmed Plan has been modified three times during the past eighteen months. On July 14, 2015, the Chapter 13 Trustee filed a Motion to Modify Chapter 13 Plan based on the Debtors' material default in Plan payments in the amount of $1,660 through June 30, 2015.  On August 5, 2015, the Court entered an Order Granting Trustee's Motion to Modify, increasing the Plan payments to $490 monthly beginning with the August 2015 payment and placing the Debtors on payment monitoring for a period of three months.

8.      On September 4, 2015, the Debtors filed a Motion to Modify and Surrender House pursuant to which they sought to surrender their home and to reduce their payments to reflect the removal of the mortgage arrearage from their Plan.   On October 2, 2015, the Debtors filed Amended Schedules I and J in support of their Motion to Modify, revealing that the co-Debtor Meagan Rodgers was no longer employed which reduced their combined monthly income from $3,520.35 to $2,272.88.  On Schedule J, the Debtors reported monthly expenses of $1,775 and net income of $497.88.   On October 9, 2015, the Debtors amended Schedule J to further increase their expenses and decrease their monthly net income to $327.88.   On October 29, 2015, the Court entered an Order on Motion to Modify pursuant to which the Debtors were permitted to surrender their home and to reduce their Plan payments to $325 beginning with the October 2015 payment, with three months payment monitoring.

9.      On July 13, 2016, the Trustee filed a Motion to Modify Chapter 13 Plan based on the Debtors' material default in Plan payments in the amount of $1,275 through June 30, 2016.  On August 8, 2016, the Court entered an Order Granting Trustee's Motion to Modify Plan, increasing Plan payments to $365 per month beginning with the August 2016 payment and placing the Debtors on three months payment monitoring.

10.     On August 17, 2016, the Debtors responded by filing the current Motion to Modify now pending before this Court.   The Debtors reported that they are unable to continue to pay their Plan payments.  They seek to surrender their vehicle to Listerhill, reduce their Plan base, and reduce their Plan payments to $225 per month for the remaining 40 months of the Plan.

11.      On September 20, 2016, the Debtors filed Amended Schedules I and J which reveal that the co-Debtor continues to be unemployed.

## II.  CONCLUSIONS OF LAW[3]

At any time after confirmation of a plan but before the debtor completes payments under a plan, a plan may be modified pursuant to 11 U.S.C. § 1329(a) by the debtor, the trustee, or an unsecured creditor to –

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance . . . .

11 U.S.C. § 1329(a)(1)-(4).

Section 1329(b)(1) provides that §§ 1322(a), 1322(b), and 1323(c), and the requirements of § 1325(a) apply to any modification under § 1329(a).   Accordingly, a modified plan must satisfy the same standards and requirements under these sections as the original confirmed plan.   If approved, pursuant to § 1329(b)(2) the plan as modified becomes the plan.

Additionally, pursuant to § 1329(c) a modified plan is subject to the same time limitations as the confirmed plan.  "The modification cannot extend the payment period beyond five years after

---

[3]      To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

the first plan payment was due, and cannot extend the original commitment period of the debtor's income except for cause."[4]

Courts generally hold that § 1329 does not require the party seeking modification to demonstrate that an unforseen substantial change in the debtor's circumstances has occurred.[5] "Because chapter 13 is completely voluntary, the debtor may propose any modified plan that satisfies the requirements of chapter 13."[6]  However, as explained by Judge Sawyer in *Scarver* for more than twenty-five years courts have been divided over whether post-confirmation modifications to surrender collateral satisfy the requirements for modification under § 1329.[7]

What is now the minority view holds that § 1329 does not allow a debtor to modify a confirmed plan under any circumstances to surrender collateral and reclassify the deficiency as unsecured.[8]  The minority view follows the Sixth Circuit's reasoning in *Chrysler Fin.  Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.  2000) in which the Court of Appeals held that post-confirmation surrender and reclassification is *per se* impermissible.  The *Nolan* court expressed five reasons for its decision:

1.  Section 1329(a) does not expressly allow a debtor to alter, reduce or reclassify a previously allowed secured claim.

2.  Section 1325(a)(5)(B) mandates that a secured claim is fixed in amount and status and must be paid in full once the claim has been allowed.

---

[4]     *In re Scarver*, 555 B.R. 822, 827 (Bankr. M.D. Ala. 2016).

[5]     *Id.* at 827 (citing *In re Thomas* 291 B.R. 189, 193 (Bankr. M.D. Ala. 2003)).

[6]     8 COLLIER ON BANKRUPTCY § 1329.02 (Alan N. Resnick & Henry J.  Sommer eds., 16th ed.).

[7]     *In re Scarver*, 555 B.R. at 828.

[8]     *In re Scarver*, 555 B.R. at n.5 (compiling cases holding that post-confirmation reclassification of a claim upon surrender is prohibited).

3.  The proposed modification would contravene § 1327(a) by shifting the burden of depreciation to secured creditors once the debtor no longer has any use for the collateral.

4.  The proposed modification would be inequitable because only the debtor, the trustee and unsecured creditors are permitted to seek modification pursuant to § 1329, thus, a secured creditor cannot seek modification to have its claim reclassified if the collateral appreciates.

5.  The plain language of § 1329(a) "only permits modification of the *amount* and *timing* of *payments*, not the total *amount* of the *claim*."[9]

Outside of the Sixth Circuit most courts follow what is now considered the majority view that a Chapter 13 debtor may surrender collateral post-confirmation and reclassify the deficiency balance as unsecured if the modification is proposed in good faith.[10]  After reviewing the leading cases on each side of the issue, Judge Sawyer adopted the majority view in *Scarver* in a well reasoned opinion which this Court now adopts.   The bankruptcy court in *Scarver* explained as follows:

> When liquidation of collateral securing a claim results in a deficiency balance, that claim is no longer secured under the plain language of § 506(a) and its secured status may be reconsidered under § 502(j).  When such a claim is no longer secured, the debtor may modify the plan post-confirmation to treat the claim as unsecured and reduce payment to it under § 1329(a)(1).  Or, if the collateral has not been liquidated, the debtor may modify the plan post-confirmation to surrender the collateral pursuant to §§ 1325(a)(5)(C) and 1329(b)(1), may treat any balance as unsecured pursuant to § 506(a), and may reduce payment on it under § 1329(a)(1).[11]

*Scarver* explained that the Sixth Circuit in *Nolan* and its progeny has read several artificial restrictions into § 1329 that are not grounded in the plain text of the statute.  Rather than reading §

---

[9]  *Chrysler Fin.  Corp. v.  Nolan (In re Nolan)*, 232 F.3d 528, 535 (6th Cir.  2000).

[10]  *In re Anderson*, 545 B.R. 174, 179  (Bankr. N.D. Miss. 2015); *See also In re Scarver*, 555 B.R. n. 6 (compiling cases holding that a Chapter 13 debtor may surrender collateral and reclassify the resulting deficiency balance to unsecured if proposed in good faith).

[11]  *In re Scarver*, 555 B.R. at 833.

1329(a) in isolation, *Scarver* held that § 1329(b)(1) should be read in conjunction with § 1329(a) to permit a party seeking modification to exercise §§ 1322(b) and 1325(a)(5)(C) in satisfaction of the § 1329(a) requirements.[12]  Although the Sixth Circuit distinguished the term "payments" from "claims" in § 1329(a)(1) to prohibit the reduction of claims, *Scarver* explained that § 1329(a)(1) provides for the reduction of payments toward a class of claims; "the modification's effect on the claim itself is irrelevant in determining whether the literal language of § 1329(a)(1) has been satisfied."[13]  Further, § 1329(a)(3) "contemplates the offset of all or part of a secured claim through surrender or liquidation of the collateral outside the plan as a payment on the claim."[14]

*Scarver* acknowledged the Sixth Circuit's concern in *Nolan* regarding the risk post-confirmation surrender and reclassification imposes upon secured creditors that debtors may abuse and then surrender worthless collateral. The bankruptcy court explained, however, that any modification must be filed in good faith pursuant to § 1329(b)(1) which incorporates § 1325(a)(3)'s good faith requirement for plan confirmation.  This requirement moderates the risks faced by secured creditors. To determine good faith in the context of the post-confirmation surrender of a vehicle, courts have considered a variety of non-exclusive factors, including:

> (1) the extent of any post-confirmation depreciation in the collateral securing the affected creditor's claim, and whether the depreciation is the fault of the debtor;
>
> (2) whether the debtor failed to maintain insurance as required by a loan agreement or an adequate protection order;
>
> (3) the proposed treatment of the creditor's deficiency claim (if any such claim exists);

---

[12]    *Id.* at 834.

[13]    *Id.* at 834.

[14]    *Id.* at 834.

(4) whether the debtor is current on plan payments; and

(5) the length of time between plan confirmation and the filing of the proposed modification.[15]

In *Scarver*, the bankruptcy court determined that § 1325(a)(3)'s good faith requirement was satisfied by the debtor's proposed modification.   When the debtor filed her Chapter 13 Petition in 2014, she owed  $4,900 to 1ˢᵗ Franklin on a loan secured by a  vehicle which she valued at $4,125 in her Schedules.  When the debtor totaled the vehicle in 2015, her insurance company offered to pay $2,802.  The bankruptcy court found no evidence that the steep drop in the vehicle's value between confirmation in April of 2015 and the time of the accident in September of 2015 was the result of any abusive treatment of the car.  Instead, it appeared that the debtor had excessively valued the car at the beginning of the case.  Accordingly, the bankruptcy court determined that the debtor satisfied  the good faith requirement under §§ 1329(b) and 1325(a)(3) and further determined that cause existed to reconsider the claim pursuant to § 502(j) given the total loss of the vehicle.

In another recent case, *In re Anderson*, 545 B.R. 174 (Bankr. N.D. Miss. 2015), the bankruptcy court also adopted the majority view on post-confirmation surrender of collateral and claim reclassification, explaining that the following elements must be present:

(1) the modification was proposed in good faith and conforms to all other requirements of § 1325(a);

 (2) there is cause to reconsider the claim, according to the standard set forth in Rule 60(b) of the Federal Rules of Civil Procedure; and

(3) the 'equities of the case' warrant reconsideration.[16]

---

[15]      *In re Scarver*, 555 B.R. at 838.

[16]      *In re Anderson*, 545 B.R. 174, 181 (Bankr. N.D. Miss. 2015).

The bankruptcy court explained that a "lack of good faith will be found where, prior to surrender, the debtor abuses or neglects the collateral, fails to maintain insurance on the collateral when required, or intentionally causes a substantial decrease in the value of the collateral."[17] Applying a totality of the circumstances standard applicable in the Fifth Circuit, the bankruptcy court concluded that the modification had been proposed in good faith where the debtors proposed to surrender a vehicle that needed a new transmission as a result of ordinary wear and tear. There was no suggestion of negligence or misconduct. If denied the right to surrender and reclassify the secured claim, the bankruptcy court explained that the debtors could simply convert to Chapter 7 and surrender the collateral. Alternatively, the debtors could dismiss and re-file their case, surrendering the collateral under a new plan. The bankruptcy court noted that "Congress's intent behind § 1329 was to facilitate successful completion of chapter 13 plans . . . The plain language and legislative intent of § 1329 both call for a broader interpretation, one that allows debtors to surrender burdensome collateral so long as the modification meets the requirements of §§ 1322(a) and (b), and 1325(a)."[18]

In the case before the Court, Listerhill argues that the Debtors' Plan has already been modified three times and that it would be inequitable to reclassify Listerhill's claim as unsecured given the small distribution the creditor has received on its secured claim. The Court construes this argument as a challenge to the proposed modification on the basis of lack of good faith and finds that an Evidentiary Hearing must be scheduled to determine whether the modification has been proposed in good faith given the standards set forth in this decision.

---

[17] *Id.* at 182.

[18] *Id.* at 181.

### III. CONCLUSION

The Court hereby adopts the reasoning expressed in the case of *In re Scarver* and finds pursuant to §1329 and § 502(j) that a debtor may modify a confirmed plan to surrender collateral and reclassify the deficiency balance as unsecured upon satisfaction of the requirements for modification, including a finding of good faith.  By separate Order the Court will schedule an Evidentiary Hearing to determine the issue of good faith in this case.

**IT IS SO  ORDERED** this the 2nd day of November 2016.


/S/ Clifton R. Jessup, Jr.
CLIFTON R. JESSUP, JR.
United States Bankruptcy Judge